IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARVIN KEITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-1317-D |
| VS. | § | |
| | § | |
| J.D. BYRIDER SYSTEMS, LLC F/K/A | § | |
| J.D. BYRIDER SYSTEMS, INC., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action alleging claims for breach of contract and quantum meruit,

defendants move to dismiss plaintiff's first amended complaint ("amended complaint") under

Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.  For the

reasons that follow, the court grants the motion and also grants plaintiff leave to replead.

I

Plaintiff Marvin Keith ("Keith") is a consultant who advises businesses on financing

strategies for acquisitions and large-scale debt refinancing projects.[1]  In 2007 Keith began

working with defendants J.D. Byrider Systems, LLC f/k/a J.D. Byrider Systems, Inc., Byrider

_____

[1]In deciding defendants' Rule 12(b)(6) motion, the court construes the amended
complaint in the light most favorable to Keith, accepts as true all well-pleaded factual
allegations, and draws all reasonable inferences in his favor.  *See, e.g., Lovick v. Ritemoney
Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is
limited to the [amended] complaint, any documents attached to the [amended] complaint, and
any documents attached to the motion to dismiss that are central to the claim and referenced
by the [amended] complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594
F.3d 383, 387 (5th Cir. 2010).

Sales of Indiana S, LLC f/k/a Byrider Sales of Indiana S, Inc., Byrider Finance, LLC, Byrider Holding Corporation, Byrider Funding, LLC, and CarNow Auto Receivables Trust 2012-1 (collectively, the "Byrider Entities") and nonparty Manchester, Inc. ("Manchester") to negotiate Manchester's purchase of the Byrider Entities' existing components.  As part of these negotiations, Manchester and the Byrider Entities entered into a mutual non-disclosure agreement.

The Byrider Entities were concerned that Manchester would not be able to secure adequate financing for the acquisition.  James Devoe ("Devoe"), the Chief Executive Officer of the Byrider Entities, requested to meet with the financing sources whom Manchester intended to use.   Under a confidentiality agreement that it had with Keith's company, Manchester was not allowed to disclose a financing source without first obtaining written permission from Keith.  Keith granted Manchester permission to make this disclosure, and he helped arrange a meeting between Devoe (along with other representatives of the Byrider Entities) and Keith's contacts at Greenwich Capital and the Royal Bank of Scotland Group ("RBS Group") (along with their affiliates), who were the potential financiers for Manchester's acquisition.

During this time, and with Manchester's permission, Keith discussed with Devoe the possibility that another entity might acquire the Byrider Entities if Manchester's attempt failed.  In connection with this contingency, Keith developed financing plans that involved entities other than Manchester.

In January 2008 Keith entered into a Non-Circumvention Agreement (the

"Agreement") with J.D. Byrider Systems, Inc. and Byrider Sales of Indiana S, Inc.[2]  The

Agreement's Confidentiality and Non-Circumvention Term ("Confidentiality/Non-

Circumvention Clause") provides:

> If Byrider does not consummate the Acquisition with
> Manchester or its assignee for a period of twenty-four (24)
> months from the date of this agreement, Byrider and those of its
> affiliates to whom the Financiers are disclosed will not contact
> or deal with or otherwise be involved in any transaction with
> any Financier introduced to Byrider pursuant to the terms of this
> Agreement without the express written approval of Consultant,
> which approval may be withheld by Consultant in his sole and
> absolute discretion.  Byrider further agrees that the identity of
> the Financiers is confidential and non-public information and
> shall maintain its confidentiality on the same basis as
> confidential information is required to be maintained in the
> confidentiality agreement previously executed with Manchester.
> This confidentiality is also for the benefit of Consultant.

Am. Compl. Ex. B at 1.  After the Agreement was executed, Keith introduced the Byrider

Entities to his financing sources and explained potential financing structures.  Manchester's

acquisition attempt, however, eventually dissolved.

In 2011 nonparty Altamount Capital Partners ("Altamount") acquired the components

of the Byrider Entities then in existence.  In April 2012 the Byrider Entities refinanced and

restructured large amounts of debt using Keith's financing contacts and restructuring

proposals, without Keith's involvement.  They restructured $145 million in receivables, made

possible in part by financing from RBS Securities, Inc. ("RBS Securities"), a subsidiary of

---

[2]Keith has attached a copy of the Agreement to his amended complaint, which the
court has considered in its review of this motion.  *See supra* note 1.

RBS Group.  Keith sues the Byrider Entities, asserting claims for breach of contract and quantum meruit.  In support of his breach of contract claim, Keith alleges that the Byrider Entities breached the Agreement by contacting and negotiating a deal with RBS Securities—an affiliate of Keith's financing source, RBS Group—and by implementing a restructuring plan that was "significantly similar" to the proposals Keith created, without first obtaining his written consent.  *Id.* at ¶ 38.  In support of his quantum meruit claim, Keith alleges that he provided valuable consulting services to the Byrider Entities by introducing them to his confidential financing sources and preparing a valuable restructuring plan, for which the Byrider Entities had reasonable notice that he expected compensation.

The Byrider Entities move to dismiss Keith's amended complaint under Rule 12(b)(6), contending that he has failed to state a claim on which relief can be granted.  Keith opposes the motion.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiff['s] amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)).  To survive the Byrider Entities' motion, Keith must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

## III

The court first considers Keith's breach of contract claim.

## A

"A breach of contract claim under Texas law requires proof of four elements: (1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendants' breach of the contract, and (4) damages to plaintiff resulting from the breach." *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F.Supp.2d 866, 872 (N.D. Tex. 2013) (Fitzwater, C.J.) (citation and internal quotation marks omitted).

> Under Texas law, the court's primary concern when interpreting a contract is to ascertain the parties' intentions as expressed objectively in the contract. In doing so, the court must examine and consider the entire writing in an effort to harmonize and give effect to all contractual provisions, so that none will be

> rendered meaningless. Language should be given its plain and grammatical meaning unless it definitely appears that the parties' intention would thereby be defeated. Where the contract can be given a definite legal meaning or interpretation, it is not ambiguous, and the court will construe it as a matter of law. A contractual provision is ambiguous when its meaning is uncertain and doubtful or if it is reasonably susceptible to more than one interpretation. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole, in light of the circumstances present when the contract was entered.

*Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 832-33 (N.D. Tex. 2011) (Fitzwater, C.J.) (citing *Bank One, Tex., N.A. v. FDIC*, 16 F.Supp.2d 698, 707 (N.D. Tex. 1998) (Fitzwater, J.)). "A contract is not ambiguous merely because the parties have a disagreement on the correct interpretation." *REO Indus., Inc. v. Natural Gas Pipeline Co. of Am.*, 932 F.2d 447, 453 (5th Cir. 1991). Courts are to construe contracts "'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)).

B

The Byrider Entities move to dismiss Keith's breach of contract claim on several grounds. They contend that (1) the transaction between the Byrider Entities and RBS Securities was not a breach of the Agreement because the Agreement pertained only to Manchester's attempted acquisition of the Byrider Entities; (2) the Agreement was expressly limited to 24 months, and the RBS Securities transaction occurred more than four years after

the Agreement was executed; and (3) the amended complaint fails to allege an injury causally connected to the purported breach. Keith responds that the Agreement is not limited to Manchester's attempted acquisition of the Byrider Entities; the 24-month time limitation refers to the period by which Manchester was required to complete the acquisition, not the period during which the Byrider Entities were prohibited from contacting the financiers; and the amended complaint adequately pleads an injury that is causally connected to the alleged breach.

C

The court need only address the 24-month time limitation contained in the Confidentiality/Non-Circumvention Clause, which provides:

> If Byrider does not consummate the Acquisition with Manchester or its assignee for a period of twenty four (24) months from the date of this agreement, Byrider and those of its affiliates to whom the Financiers are disclosed will not contact or deal with or otherwise be involved in any transaction with any Financier introduced to Byrider pursuant to the terms of this Agreement without the express written approval of Consultant, which approval may be withheld by Consultant in his sole and absolute discretion.

Am. Compl. Ex. B at 1. Keith maintains that the Confidentiality/Non-Circumvention Clause meant that Byrider had 24 months to consummate the acquisition of Manchester, and, if it did not, the agreement went into effect. The Byrider Entities posit that the 24-month period was a limitation on the period during which Byrider was prohibited from communicating with the financiers.

Based on the following reasoning, the court agrees with the result for which the

- 7 -

Byrider Entities contend. In the first sentence of the Confidentiality/Non-Circumvention Clause, a comma should have been inserted after the word "assignee." This is so because the introductory clause that begins with "if" is a dependent clause that precedes the main clause. *See Chicago Manual of Style Online*, § 6.30 (16th ed. 2010) ("A dependent clause that precedes a main clause should be followed by a comma."). Had a comma been inserted, then the first sentence (which the court now paraphrases to make the point succinctly) would clearly mean this:

> If Byrider does not consummate the Acquisition with Manchester, then for a period of twenty four (24) months from the date of this agreement, Byrider and the affiliates to whom the Financiers are disclosed will not contact, deal with, or otherwise be involved in any transaction with any Financier introduced to Byrider pursuant to the terms of this Agreement, except with Keith's approval, which he can withhold in his sole discretion.

In other words, if the Byrider Entities did not consummate the Acquisition with Manchester, then during a 24-month period (commencing on the date of the agreement) the Byrider Entities and its affiliates were prohibited from having contacts, dealings, or involvement with any Financiers disclosed to them under the agreement, unless Keith approved.

Keith maintains that, because there is no comma after "assignee," the sentence should be interpreted to mean that the Byrider Entities had 24 months to consummate the acquisition by Manchester, and, if they did not, they were then prohibited *in perpetuity* from contacting, dealing with, or otherwise being involved with any of the financiers whom Keith had disclosed to them. In other words, Keith's proffered interpretation is that the prohibition

term did not take effect until after the 24-month period had elapsed, but once it took effect, it remained in effect forever.  The court disagrees with this interpretation for three reasons.

First, the use of the word "for" in the phrase "for a period of twenty four (24) months" does not support his interpretation.  Had the parties intended to provide the Byrider Entities with 24 months to consummate the acquisition by Manchester, they would likely have used a word such as "within" or "by" to denote such a deadline.  The more natural reading of the word "for" is that it established the time period during which the Byrider Entities were prohibited from contacting, dealing with, or having any involvement with the financiers if the proposed acquisition was not consummated.[3]

Second, Keith's interpretation is not supported by the Agreement when viewed as a whole.  The court must construe the entire writing in an effort to harmonize and give effect to all contractual provisions so that none will be rendered meaningless.  As expressed objectively in the Agreement, the parties' intent was to ensure that the Byrider Entities were able to obtain information about Manchester's funding sources, while at the same time protecting Keith, the one who had arranged the financing, from having his efforts circumvented.  But under Keith's interpretation of the Confidentiality/Non-Circumvention

---

[3]Indeed, the use of the word "for" in non-circumvention agreements has been used to refer to the period during which the party receiving sensitive information from the other is prohibited from using that information to circumvent the proposed joint venture.  *See, e.g., Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 558 (4th Cir. 1990) (involving non-circumvention agreement between investment analyst and investor that prohibited investor from making competing bid "for a period equal to the term of the Purchase Agreement," which was three years after investor's purchase of analyst's confidential information).

Clause, the Byrider Entities would have been free to contact and deal with the financiers for a period of up to 24 months, beginning on the day the Agreement was executed, provided the acquisition with Manchester had not yet been consummated.  This result is plainly contrary to the purpose of a non-circumvention agreement, which is designed to protect the party divulging sensitive information during an ongoing negotiation process.  *See Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 561-62 (4th Cir. 1990) (discussing purpose of non-circumvention agreements).  In fact, Keith's interpretation would create a gap in the protection afforded Manchester (or Keith) at the most critical phase of the ongoing negotiations between the parties: the moment when the Agreement was executed and the identity of the financiers was first provided to the Byrider Entities (and the risk of circumvention was greatest).

Third, Keith's interpretation would render unenforceable the time period during which the prohibition was in effect, because it would be tantamount to an unreasonable restraint of trade.  Because the Confidentiality/Non-Circumvention Clause prohibits the Byrider Entities from contacting, dealing with, or otherwise being involved with any financier disclosed by Keith, it is a restrictive covenant.   Under Texas law, a restrictive covenant is an unenforceable restraint of trade unless it is reasonable.  *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990).  A restrictive covenant is unreasonable unless it meets three criteria: (1) it must be ancillary to an otherwise valid transaction (e.g., the sale of a business) or relationship (e.g., an employment relationship); (2) the restraint cannot be greater than necessary to protect the promisee's legitimate interest; and (3) the promisee's

need for protection afforded by the agreement not to compete must not be outweighed by either the hardship to the promisor or injury to the public. *See id.* at 681-82. As to the second requirement, the extent of the restraint must be limited appropriately as to time, territory, and type of activity. *Id.* at 682. But Keith's interpretation would result in an unreasonable restraint of trade because it would be perpetual. It would also be unlimited in terms of scope. The amended complaint does not plead factual content that permits the court to draw the reasonable inference that the parties intended to enter into such an extreme (and patently unenforceable) restrictive covenant. On the contrary, the only reasonable inference to be drawn from the amended complaint is that the parties intended the phrase "for a period of twenty four (24) months from the date of this agreement" to serve as a limitation on the duration of the restrictive covenant.[4]

D

The Byrider Entities' debt-restructuring transaction with RBS Securities was plainly beyond the scope of the Agreement because it occurred more than four years after the

---

[4]Keith makes the conclusory assertion that, because the court is deciding a motion to dismiss, it cannot adopt the Byrider Entities' interpretation of the Agreement. The court disagrees. "When 'the interpretation of a contract is at issue, a court is not constrained to accept the allegations of the complaint in respect of the construction of the Agreement,' although all contractual ambiguities must be resolved in the plaintiff's favor." *Geske v. Wells Fargo Bank, Nat'l Ass'n*, 2012 WL 1231835, at *3 (N.D. Tex. Apr. 12, 2012) (Lindsay, J.) (quoting *Banks v. Correctional Servs. Corp.*, 475 F.Supp.2d 189, 195 (E.D.N.Y. 2007) (citation and internal quotation marks omitted)). Here, because the court concludes that the Agreement is unambiguous, the requirement that the court resolve all contractual ambiguities in Keith's favor does not preclude it from dismissing Keith's breach of contract claim.

execution of the Agreement.[5]  Accordingly, the court holds that Keith has failed to plead a plausible breach of contract claim.[6]

## IV

The court now considers Keith's quantum meruit claim.[7]

## A

"'Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received.'"  *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 975 (5th Cir. 2014) (per curiam) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

---

[5]Keith contends that the Byrider Entities have argued "that the Agreement is ambiguous" and have attempted to introduce extrinsic evidence to contradict, vary, or add to the terms of the Agreement.  The court disagrees.  The Byrider Entities do not rely on extrinsic evidence; rather, they contend that the Agreement is unambiguous in that it does not apply to the Byrider Entities' 2012 transaction with RBS Securities.  The court agrees with the Byrider Entities' interpretation of the Agreement and concludes that the Agreement is unambiguous in this respect.  The court is not considering extrinsic evidence in reaching this conclusion.

[6]Because the court concludes that Keith's breach of contract claim should be dismissed on this basis, it does not reach the Byrider Entities' other arguments.

[7]"[A] party to a contract may seek alternative relief under both contract and quasi-contract theories."  *Woodcock v. Chase Home Fin., LLC*, 2012 WL 393260, at *3 (S.D. Tex. Feb. 3, 2012) (citing *In re Kellogg Brown & Root Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (ellipsis omitted).  Accordingly, "there . . . is nothing to prevent [Keith] from pleading alternative theories of express contract and quantum meruit."  *Tatum v. Tatum*, 606 S.W.2d 31, 33 (Tex. App. 1980, writ ref'd n.r.e.).

> Quantum meruit is an equitable remedy which does not arise out
> of a contract, but is independent of it.  Generally, a party may
> recover under quantum meruit only when there is no express
> contract covering the services or materials furnished.  This
> remedy "is based upon the promise implied by law to pay for
> beneficial services rendered and knowingly accepted."
> Recovery in quantum meruit will be had when non payment for
> the services rendered would "result in an unjust enrichment to
> the party benefited by the work."

*Id.* (quoting *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)).  To recover in quantum meruit, Keith must establish that: "1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient."  *Id.* (citing *Vortt*, 787 S.W.2d at 944).

B

The Byrider Entities move to dismiss Keith's quantum meruit claim on the ground that the claim is implausible on its face.  They maintain that Keith does not allege that (1) there was any agreement between him and the Byrider Entities that entitled him to compensation, (2) the Byrider Entities had reasonable notice that Keith expected compensation for any alleged services, (3) or the "financing structures" allegedly provided by Keith were unique, novel, or different from any other asset-backed securitization offerings from a major lending institution such as RBS Securities.  Keith responds that the amended complaint identifies the consulting services rendered to the Byrider Entities as valuable services for which he sought to be compensated, pleads factual allegations to the effect that the Byrider Entities accepted

these services when they transacted with RBS Securities to restructure debt with a plan "substantially similar" to the plan proposed by Keith, and pleads that the Byrider Entities had reasonable notice that Keith expected compensation for the services because Devoe, the Byrider Entities' Chief Executive Officer, signed the Agreement.

C

The court holds that the amended complaint fails to plausibly allege a claim for quantum meruit.  The amended complaint does not plead any factual content suggesting that Keith was a consultant *for the Byrider Entities*.  In fact, it refers to an agreement between Keith and Manchester, *see* Am. Compl. ¶ 23, but does not refer to a similar arrangement between Keith and the Byrider Entities.[8]  The Agreement—which Keith apparently relies on in support of his quantum meruit claim[9]—does not mention any compensation to Keith.  Devoe's signature, therefore, does not provide a basis for the court to draw the reasonable inference that the Byrider Entities were on notice that Keith expected to be paid for his disclosure of the financiers' identities in connection with Manchester's acquisition attempt.

Separate from the Agreement's reference to the *identity* of the financiers, Keith alleges

---

[8]The Byrider Entities repeatedly contend that Keith was working as a consultant for Manchester during the relevant period.  Although the factual allegations in the amended complaint are consistent with this claim, the amended complaint does not allege this, nor is it the only reasonable inference to be drawn from the amended complaint.  Accordingly, the court is *not* assuming that Keith worked as a consultant for Manchester.

[9]For example, Keith states: "Plaintiff's quantum meruit cause of action *stems from the Non-Circumvention Agreement* in that the Defendants were conferred a benefit when the transaction with RBS Securities, Inc. took place in violation of the Non-Circumvention Agreement."  P. Resp. Br. 17 (emphasis added).

that he provided the Byrider Entities with "restructuring proposals," Am. Compl. ¶ 32, and a "debt restructuring plan," *id.* at ¶ 40. But the only allegation as to notice is Devoe's signature on the Agreement, and the Agreement does not mention the restructuring proposals or the debt restructuring plan. Thus there are no factual allegations in the amended complaint that would permit the court to draw the reasonable inference that the Byrider Entities were on notice that Keith expected to be compensated for providing these services. Adding to the implausibility of this claim (as now pleaded) is the allegation that Keith is entitled to $4.35 million, plus interest, in damages because he "did not obtain his commission for brokering the restructuring plan between Defendants and RBS Securities, Inc." *Id.* at ¶ 42. The amended complaint does not plead factual content that supports the premise that Keith actually brokered the Byrider Entities' transaction with RBS Securities (which occurred more than four years after the Agreement was executed) or that the Byrider Entities were on notice that Keith expected to be paid such a large sum for his efforts, whatever those efforts were. The court therefore concludes that Keith has failed to plead a plausible quantum meruit claim, and it dismisses the claim.

V

Although the court is granting the Byrider Entities' motion to dismiss, it will permit Keith to replead. *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in

a manner that will avoid dismissal).  Although Keith has already amended his complaint once, this will be his first opportunity to do so following a substantive ruling identifying the deficiencies in his claims, and Keith has explicitly requested leave to amend.[10]  The court grants him 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.[11]

\*   \*   \*

For the reasons explained, the court grants defendants' motion to dismiss under Rule 12(b)(6) and grants Keith leave to replead.[12]

---

[10]The Byrider Entities oppose Keith's request for leave to replead, arguing that any further effort to amend would be futile.  As this court has frequently noted, the court's almost unvarying practice when futility is raised is to address the merits of the claim or defense in the context of a Rule 12(b)(6) or Rule 56 motion, where the procedural safeguards are surer.  *See, e.g., Klein v. Fed. Ins. Co.*, 2014 WL 239652, at \*6 (N.D. Tex. Jan. 22, 2014) (Fitzwater, C.J.).

[11]Keith's second amended complaint should clearly identify the defendants against whom each claim is alleged.  The first amended complaint can be fairly read to assert the breach of contract claim only against J.D. Byrider Systems, LLC f/k/a Byrider Systems, Inc. and Byrider Sales of Indiana S, LLC f/k/a Byrider Sales of Indiana S, Inc.  But because the first paragraph under the breach of contract claim heading incorporates the preceding paragraphs by reference, *see* Am. Compl. ¶ 35, and Keith refers in the preceding paragraphs to all defendants collectively as the "Byrider Entities," *see, e.g., id.* at ¶ 29, it is unclear whether he intends to assert the breach of contract claim against all defendants.

[12]The Byrider Entities have attached three exhibits to their motion: an affidavit of Keith that appears to have been submitted in connection with a bankruptcy proceeding, a voluntary petition for bankruptcy submitted by Manchester, and a one-page excerpt from an annual report by RBS Group.  Because these documents are not referenced in the amended complaint, the court will not consider them.

The Byrider Entities contend that, even if these documents are not referenced in the amended complaint, the court can take judicial notice of Keith's affidavit and Manchester's bankruptcy petition on the ground that they are public records, and of certain facts about RBS Securities (e.g., that RBS Securities is the U.S. retail and commercial banking division of

**SO ORDERED**.

October 14, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

RBS Group), which are contained in the annual report, on the ground that these facts are
"public information."  Because the court concludes that the Byrider Entities are entitled to
dismissal of Keith's amended complaint without regard to these documents and facts, the
court denies as moot the Byrider Entities' request for judicial notice.