IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARVIN KEITH,                         §
                                      §
                    Plaintiff,        §
                                      §   Civil Action No. 3:14-CV-1317-D
VS.                                   §
                                      §
J.D. BYRIDER SYSTEMS, LLC F/K/A       §
J.D. BYRIDER SYSTEMS, INC., et al.,   §
                                      §
                    Defendants.       §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Marvin Keith ("Keith") to recover on claims for breach of

contract and quantum meruit, defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for

failure to state a claim on which relief can be granted, defendant James F. DeVoe, Jr.

("DeVoe") moves to dismiss under Rule 12(b)(2) for lack of *in personam* jurisdiction, and

defendants move in the alternative under Rule 12(e) for a more definite statement.  For the

reasons that follow, the court grants DeVoe's Rule 12(b)(2) motion without reaching whether

Keith has stated a claim on which relief can be granted, grants in part and denies in part the

remaining defendants' Rule 12(b)(6) motion to dismiss, and denies the remaining defendants'

alternative Rule 12(e) motion, in part as moot and in part on the merits.

I

Because the background facts and procedural history are set out in the court's prior memorandum opinion and order, *Keith v. J.D. Byrider Systems, LLC*, 2014 WL 5148124, at *1 (N.D. Tex. Oct. 14, 2014) (Fitzwater, C.J.) ("*Keith I*"), the court will focus on what is pertinent in the present decision.

Keith is a consultant who advises businesses on financing strategies for acquisitions and large-scale debt refinancing projects.[1]  In 2007 Keith began working with defendants J.D. Byrider Systems, LLC f/k/a J.D. Byrider Systems, Inc., Byrider Sales of Indiana S, LLC f/k/a Byrider Sales of Indiana S, Inc., (collectively, the "Byrider Entities"), nonparty Manchester, Inc. ("Manchester"), and DeVoe, who was then the Chief Executive Officer of the Byrider Entities, to negotiate Manchester's purchase of the Byrider Entities' existing components.  As part of these negotiations, Manchester and the Byrider Entities entered into a mutual non-disclosure agreement.

The Byrider Entities were concerned that Manchester would not be able to secure adequate financing for the acquisition, and DeVoe requested to meet with the financing sources whom Manchester intended to use.  Under a confidentiality agreement that it had

---

[1]In deciding defendants' Rule 12(b)(6) motion, the court construes plaintiff's second amended complaint in the light most favorable to him, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiff's favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

with Keith's company, Manchester was not allowed to disclose a financing source without first obtaining written permission from Keith.  Keith granted Manchester permission to make this disclosure, and he helped arrange a meeting between DeVoe (along with other representatives of the Byrider Entities) and Keith's contacts at Greenwich Capital and the Royal Bank of Scotland Group ("RBS Group") (along with their affiliates), who were the potential financiers for Manchester's acquisition.

During this time, and with Manchester's permission, Keith discussed with DeVoe the possibility that another entity might acquire the Byrider Entities if Manchester's attempt failed.  In connection with this contingency, Keith developed financing plans that involved entities other than Manchester.

In January 2008 Keith entered into a Non-Circumvention Agreement (the "Written Agreement") with J.D. Byrider Systems, Inc. and Byrider Sales of Indiana S, Inc.  The Agreement's Confidentiality and Non-Circumvention Term ("Confidentiality/Non-Circumvention Clause") provides:

> If Byrider does not consummate the Acquisition with Manchester or its assignee for a period of twenty four (24) months from the date of this agreement, Byrider and those of its affiliates to whom the Financiers are disclosed will not contact or deal with or otherwise be involved in any transaction with any Financier introduced to Byrider pursuant to the terms of this Agreement without the express written approval of Consultant, which approval may be withheld by Consultant in his sole and absolute discretion.

- 3 -

P. Mem. Resp. Mot. Dis. Ex. 1 at 1.[2]  Keith alleges in his second amended complaint that subsequent to the Written Agreement, Keith and the Byrider Entities entered into other agreements ("Oral Agreements") under which the Byrider Entities agreed that they would not contact, deal with, or otherwise conclude or be involved in any transaction with financial sources introduced by Keith without his consent, and further represented and agreed that he would be compensated if the Byrider Entities utilized or entered into any transaction with financial sources he had introduced.  Keith also alleges that he entered into similar agreements with DeVoe, individually.

After the Written Agreement was executed and the Oral Agreements were made, Keith introduced the Byrider Entities to his financing sources and explained potential financing structures.  Manchester's acquisition attempt, however, eventually dissolved.

In 2011 nonparty Altamont Capital Partners ("Altamont") acquired the components of the Byrider Entities then in existence.  In April 2012 the Byrider Entities refinanced and restructured large amounts of debt using Keith's financing contacts and restructuring proposals, without Keith's involvement.  They restructured $145 million in receivables, made possible in part by financing from RBS Securities, Inc. ("RBS Securities"), a subsidiary of

---

[2]The court is citing the document in this manner because Keith did not, as N.D. Tex. Civ. R. 7.1(i)(1) requires, include the document in an appendix. *See* Rule 7.1(i)(1) ("A party who relies on materials—including depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials—to support or oppose a motion must include the materials in an appendix.").  Nor did he comply with Rule 7.1(i)(4), which provides, in relevant part, that "[e]ach page of the appendix must be numbered legibly in the lower, right-hand corner."

RBS Group.

Keith sues the Byrider Entities and DeVoe, asserting claims for breach of contract and quantum meruit.  In support of his breach of contract claim, Keith alleges that the Byrider Entities and DeVoe breached the Written Agreement as well as the Oral Agreements by contacting and negotiating a deal with RBS Securities—an affiliate of Keith's financing source, RBS Group—and by implementing "the very same" restructuring plan that Keith created, without first obtaining his written consent.  *Id.* at ¶ 41.  In support of his quantum meruit claim, Keith alleges that he provided valuable consulting services to the Byrider Entities by introducing them to his confidential financing sources and preparing a valuable restructuring plan, for which the Byrider Entities had reasonable notice that he expected compensation.

In *Keith I* the court concluded that Keith had failed to state plausible breach of contract and quantum meruit claims on which relief could be granted, dismissed those claims under Rule 12(b)(6), and granted Keith leave to replead.  Keith then filed a second amended complaint, which defendants now move to dismiss under Rule 12(b)(6), contending that he has failed to state a claim on which relief can be granted.  One defendant—DeVoe—moves to dismiss under Rule 12(b)(2), contending that the court cannot exercise *in personam* jurisdiction over him.  In the alternative, defendants move for a more definite statement under Rule 12(e).

- 5 -

II

The court first considers DeVoe's Rule 12(b)(2) motion to dismiss Keith's action against him for lack of *in personam* jurisdiction.

A

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over DeVoe would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To

comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted).  To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interests in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in fundamental social policies.  *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant.  *Mink*, 190 F.3d at 336.  "For the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' his activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum."  *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'"  *Id.* (citations omitted).  "[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'"  *Daimler AG v. Bauman*, ___ U.S. ___, 134 S.Ct.

- 7 -

746, 751 (2014) (first brackets added) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, 131 S.Ct. 2846, 2851 (2011)).

"The district court usually resolves the jurisdictional issue without conducting a hearing." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (footnote omitted). "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits.  Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a prima facie case for personal jurisdiction." *Latshaw*, 167 F.3d at 211 (footnotes omitted).  "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted."  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion).

B

The court concludes that Keith has not made a prima facie showing that the court can exercise either general or specific personal jurisdiction over DeVoe.  In Keith's response to DeVoe's motion to dismiss, he contends that DeVoe solicited and negotiated contracts with Keith in Texas, that were to be performed in Texas, and that were governed by Texas law. But these assertions neither appear in Keith's second amended complaint nor are they supported by evidence (such as in the form of an affidavit or declaration of Keith).  This is

- 8 -

a material failure.  The court must accept as true the uncontroverted allegations of Keith's second amended complaint and resolve in his favor any factual conflicts posed by the affidavits.  But if the necessary allegations are missing from the second amended complaint, there are no uncontroverted allegations to be accepted as true. And if Keith has also failed to introduce any supporting evidence, there are no factual conflicts to resolve in his favor so that he can avoid dismissal.  *See New Vector Commc'ns, Inc. v. Strategic Commc'ns Servs., Inc.*, 2007 WL 465215, at *2 (N.D. Tex. Feb. 13, 2007) (Fitzwater, J.) (holding that once defendant presented evidence controverting allegations of plaintiff's complaint that purported to show existence of specific and general jurisdiction, burden shifted to plaintiff to adduce affidavit evidence sufficient to satisfy minimum contacts prong of due process test, and that plaintiff's failure to respond to motion and adduce evidence warranted dismissal).

The only allegation in the second amended complaint that is related to the court's power to exercise personal jurisdiction over DeVoe is a conclusory assertion that defendants "engage, or have engaged, in a continuous and systematic course of business, and are doing business, within the State of Texas." 2d Am. Compl. ¶ 5.  Keith does not specifically address DeVoe's contacts apart from those of the Byrider Entities.  Concerning DeVoe's conduct, Keith alleges that DeVoe signed the Written Agreement on behalf of each of the Byrider Entities, *see id.* at ¶ 30, and that he separately entered into the Oral Agreements with Keith, *see id.* at ¶ 38, but Keith does not allege that any of these actions occurred in Texas, were directed at Texas, or would have an effect in Texas.  Keith has failed to allege that DeVoe had *any* contacts with Texas, much less contacts that are sufficient to support the exercise of

- 9 -

either general or specific personal jurisdiction.

Furthermore, there are no allegations that would support imputing the Byrider Entities' contacts with Texas to DeVoe. "[A]n individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F.Supp.2d 366, 378 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *Stuart*, 772 F.2d at 1197). Although there are exceptions to this general rule where the corporation is the alter ego of the individual corporate officer, or where the corporate officer injures a person by tortious activity, *see id.*; *Optimum Return LLC v. CyberKatz Consulting, Inc.*, 2004 WL 827835, at *2 (N.D. Tex. Mar. 26, 2004) (Fitzwater, J.), Keith has not suggested or made any allegations that would indicate that either of these exceptions applies here.

Moreover, Keith has not made a prima facie showing based on affidavit or declaration evidence offered in response to DeVoe's motion to dismiss. In his response brief, he cites only his second amended complaint, P. Mem. Resp. Mot. Dis. 24 n.104, and the Texas choice of law clause in the Written Agreement, *id.* at n.105. But as noted above, the allegations of his second amended complaint are insufficient to make a prima facie showing, and the Written Agreement was entered into by Keith, J.D. Byrider Systems, Inc., and Byrider Sales of Indiana S, Inc., not DeVoe.

C

Accordingly, the court holds that Keith has failed to make a prima facie showing that the court can exercise *in personam* jurisdiction over DeVoe based either on general or specific jurisdiction. The court therefore grants DeVoe's Rule 12(b)(2) motion to dismiss and dismisses Keith's action against DeVoe without prejudice by Rule 54(b) final judgment filed today.

III

The court now turns to defendants' Rule 12(b)(6) motion to dismiss Keith's breach of contract claim.[3]

A

In *Keith I* the court addressed plaintiff's first amended complaint, which only asserted a claim against the Byrider Entities for allegedly breaching the Written Agreement. In his second amended complaint, Keith re-asserts this breach of contract claim, but he also alleges that the Byrider Entities breached the Oral Agreements, under which the Byrider Entities allegedly agreed not to contact, deal with, or otherwise be involved in any transaction with any financier introduced to them by Keith, without his approval, or to use Keith's proprietary information or sources without compensating him. The court will address Keith's claims separately.

---

[3]The standard that the court follows in deciding defendants' Rule 12(b)(6) motion is set out in *Keith I*, 2014 WL 5148124, at *2.

B

"'A breach of contract claim under Texas law requires proof of four elements: (1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendants' breach of the contract, and (4) damages to plaintiff resulting from the breach.'" *Keith I*, 2014 WL 5148124, at *3 (quoting *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F.Supp.2d 866, 872 (N.D. Tex. 2013) (Fitzwater, C.J.)).

> Under Texas law, the court's primary concern when interpreting a contract is to ascertain the parties' intentions as expressed objectively in the contract. In doing so, the court must examine and consider the entire writing in an effort to harmonize and give effect to all contractual provisions, so that none will be rendered meaningless. Language should be given its plain and grammatical meaning unless it definitely appears that the parties' intention would thereby be defeated. Where the contract can be given a definite legal meaning or interpretation, it is not ambiguous, and the court will construe it as a matter of law. A contractual provision is ambiguous when its meaning is uncertain and doubtful or if it is reasonably susceptible to more than one interpretation. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole, in light of the circumstances present when the contract was entered.

*Id.* (internal quotation marks omitted) (quoting *Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 832-33 (N.D. Tex. 2011) (Fitzwater, C.J.)). "A contract is not ambiguous merely because the parties have a disagreement on the correct interpretation." *Id.* (quoting *REO Indus., Inc. v. Natural Gas Pipeline Co. of Am.*, 932 F.2d 447, 453 (5th Cir. 1991)). "Courts are to construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served and will avoid when possible and proper a construction which

is unreasonable, inequitable, and oppressive.'" *Id.* (quoting *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005)) (internal quotation marks omitted).

C

Defendants move to dismiss Keith's claim for breach of the Written Agreement, contending that the court has already dismissed this identical breach of contract claim. Keith responds that he has now provided additional clarifying information and has included additional facts and allegations in the second amended complaint that demonstrate that the court's interpretation of the Written Agreement in *Keith I* was incorrect. Before addressing Keith's new allegations, the court will briefly summarize its holding in *Keith I.*

1

In *Keith I* the court considered the 24-month time limitation contained in the Written Agreement's Confidentiality/Non-Circumvention Clause, which provides:

> If Byrider does not consummate the Acquisition with Manchester or its assignee for a period of twenty four (24) months from the date of this agreement, Byrider and those of its affiliates to whom the Financiers are disclosed will not contact or deal with or otherwise be involved in any transaction with any Financier introduced to Byrider pursuant to the terms of this Agreement without the express written approval of Consultant, which approval may be withheld by Consultant in his sole and absolute discretion.

Resp. Ex. 1 at 1. Keith had argued (as he does now) that the Confidentiality/Non-Circumvention Clause should be interpreted to mean that the Byrider Entities had 24 months to consummate a potential acquisition by Manchester, and, if they did not, the Confidentiality/Non-Circumvention Clause went into effect and prohibited them from

- 13 -

contacting or transacting with Keith's financiers from then on.  The court disagreed with Keith's position, and instead interpreted the 24-month period in the clause as a period that began on the date the Written Agreement was signed and continued for 24 months, during which the Byrider Entities were prohibited from communicating with the financiers.  In reaching this conclusion, the court determined that, in the first sentence of the Confidentiality/Non-Circumvention Clause, a comma should have been inserted after the word "assignee."  *See Keith I*, 2014 WL 5148124, at *4 (citing *Chicago Manual of Style Online*, § 6.30 (16th ed. 2010) ("A dependent clause that precedes a main clause should be followed by a comma.")).  The court explained that inserting the comma after the word "assignee" would clarify the meaning of the clause, which could be paraphrased as follows:

> If Byrider does not consummate the Acquisition with Manchester, then for a period of twenty four (24) months from the date of this agreement, Byrider and the affiliates to whom the Financiers are disclosed will not contact, deal with, or otherwise be involved in any transaction with any Financier introduced to Byrider pursuant to the terms of this Agreement, except with Keith's approval, which he can withhold in his sole discretion.

*Id.*  The court held that this interpretation of the Confidentiality/Non-Circumvention Clause was supported both by a natural reading of the words used by the parties and by the Written Agreement when viewed as a whole.  The court set out three reasons for rejecting Keith's proposed interpretation.

First, the court looked to the specific words used by the parties in the Confidentiality/Non-Circumvention Clause.  The court concluded that the use of the word

"for" in the phrase "for a period of twenty four (24) months" suggested that the 24-month period was a period of limited duration, during which the Byrider Entities were precluded from communicating with the financiers. The court explained that had the parties intended instead to provide the Byrider Entities with 24 months to consummate the acquisition by Manchester, *after which* they would be precluded from contacting the financiers for an unlimited period, as Keith proposed, the parties would have used a word such as "within" or "by" to make clear that the 24-month period was a deadline by which the Byrider Entities had to consummate the transaction.

Second, the court read the Confidentiality/Non-Circumvention Clause in the context of the Written Agreement as a whole. The court concluded that Keith's proposed interpretation would have permitted the Byrider Entities to contact and deal with the financiers for a period of up to 24 months beginning on the day the Written Agreement was executed, and that after the expiration of this 24-month period, the protection of the clause would take effect. The court explained that Keith's proposed interpretation of the clause created a gap in the protection afforded Manchester (and perhaps Keith) at the very moment when the Written Agreement was first executed and the identity of the financiers was first disclosed to the Byrider Entities. The court reasoned that this interpretation would be plainly contrary to the purpose of a non-circumvention agreement, which is designed to protect the party divulging sensitive information during an ongoing negotiation process. Thus the court concluded that Keith's interpretation of the Confidentiality/Non-Circumvention Clause was not supported by the Written Agreement when viewed as a whole.

Third, the court pointed to the fact that Keith's interpretation of the Confidentiality/Non-Circumvention Clause would render the clause unenforceable as an unreasonable restraint of trade. The court explained that the Confidentiality/Non-Circumvention Clause was a restrictive covenant under Texas law, and therefore must, *inter alia*, include reasonable limitations as to time, territory, and type of activity to be enforceable. Keith maintained (and continues to maintain) that the Confidentiality/Non-Circumvention Clause imposes a prohibition on the Byrider Entities that is both perpetual in duration and unlimited in scope. Because this interpretation of the clause would render it unenforceable, and because the court found that the complaint did not plead factual content that would permit the court to draw the reasonable inference that the parties intended to enter into such an extreme and patently unenforceable restrictive covenant, the court concluded that the only reasonable inference to be drawn from the first amended complaint was that the parties to the Written Agreement intended the 24-month period to serve as a limitation on the duration of the restrictive covenant.

The court therefore rejected Keith's proposed interpretation of the Confidentiality/Non-Circumvention Clause, and it concluded instead that the clause operated as a time period of limited duration (24 months) beginning at the time the Written Agreement was executed, during which the Byrider Entities were precluded from contacting the financiers. Because the Byrider Entities' debt-restructuring transaction with RBS Securities occurred more than four years after the execution of the Written Agreement, the court held that the conduct that made up the alleged breach was beyond the scope of the

Confidentiality/Non-Circumvention Clause and therefore could not support Keith's breach of contract claim.

2

Keith contends that he has included in his second amended complaint additional allegations that demonstrate that his proposed interpretation of the Confidentiality/Non-Circumvention Clause is not inconsistent with the general purpose of a typical non-circumvention agreement, and that the court's interpretation of the clause in *Keith I* was incorrect.  Keith now alleges that, prior to entering into the 2008 Written Agreement, the Byrider Entities had already entered into a mutual non-disclosure agreement (the "Non-Disclosure Agreement") with Manchester, wherein the Byrider Entities agreed not to use or disclose any of the confidential and proprietary information shared with them in connection with the negotiations or the acquisition process; that the 2008 Written Agreement was a separate non-circumvention agreement intended to provide additional protections to Keith outside and beyond the Non-Disclosure Agreement; and that because he was already protected during the initial 24-month period by the Non-Disclosure Agreement, the Written Agreement signed in 2008 clearly provided protection that would *begin* 24 months from the date of the Non-Circumvention Agreement.

The court disagrees with Keith's argument that the existence of the Non-Disclosure Agreement between Manchester and the Byrider Entities beginning in 2007 necessarily demonstrates that the protections afforded Keith by the Written Agreement, signed in 2008, did not take effect until 24-months after the agreement was signed.  Although Keith does not

- 17 -

articulate it this way, he is essentially arguing that, because the Non-Disclosure Agreement existed beginning in 2007, interpreting the Written Agreement to take effect 24 months after its execution would not create a gap in coverage, as the court suggested in *Keith I*.  Keith contends that, because the protections of the Written Agreement were not intended simply to duplicate the protections already afforded by the Non-Disclosure Agreement, the protections in the Written Agreement were clearly not intended to take effect in 2008, while the Non-Disclosure Agreement was still in effect.

But this reasoning assumes that the protections afforded by the Written Agreement were duplicative of those provided by the Non-Disclosure Agreement—an assumption that is not supported by the allegations in the second amended complaint.  Keith alleges that the Non-Disclosure Agreement was an agreement between the Byrider Entities and Manchester, while the Written Agreement, entered into in 2008, was an agreement between the Byrider Entities and Keith, individually.  And although the text of the Non-Disclosure Agreement has not been provided to the court, the fact that Keith was not a party to the Non-Disclosure Agreement, but was a party to the Written Agreement, suggests that the protections afforded by the two agreements did not necessarily overlap.

And even if Keith is correct that the existence of the Non-Disclosure Agreement in 2007 adequately addresses *Keith I*'s conclusion that Keith's proposed interpretation of the Confidentiality/Non-Disclosure Clause would create a gap in coverage, this argument alone does not rebut the other grounds on which *Keith I* relies: the natural reading of the words contained in the Confidentiality/Non-Disclosure Clause, the grammatical rules requiring that

a comma be inserted after the word "assignee," or the absence of facts alleged in the complaint that would permit the court to reasonably infer that the parties to the Written Agreement intended to enter into a patently unenforceable restrictive covenant.  Thus the additional facts that Keith alleges in the second amended complaint do not alter the court's conclusion in *Keith I* that the only reasonable inference to be drawn from the language of the Written Agreement and from the facts that Keith alleges is that the parties intended the phrase "for a period of twenty four (24) months from the date of this agreement" to serve as a limitation on the duration of the restriction prohibiting the Byrider Entities from communicating with the financiers.

The court therefore concludes, as it did in *Keith I*, that the Confidentiality/Non-Circumvention Clause unambiguously operated as a time period of limited duration (24 months), during which the Byrider Entities were precluded from contacting the financiers. Because it is undisputed that the Byrider Entities' debt-restructuring transaction with RBS Securities occurred more than four years after the Written Agreement took effect, the Byrider Entities' conduct constituting the alleged breach occurred beyond the scope of the Confidentiality/Non-Circumvention Clause and cannot form the basis for Keith's breach of contract claim.  Accordingly, to the extent Keith's breach of contract claim is premised on the Byrider Entities' breach of the Written Agreement, the claim is dismissed.

D

The court now considers Keith's claim that the Byrider Entities breached the Oral Agreements.

1

Keith alleges in his second amended complaint that, following the execution of the Written Agreement, Keith and the Byrider Entities entered into the Oral Agreements, under which Keith agreed to provide the Byrider Entities advice and consultation in connection with variations on private investment approaches, a follow-on business growth strategy, and a debt restructuring plan. Keith alleges that the Byrider Entities promised in exchange that, without his consent, they would not contact, deal with, or otherwise conclude or be involved in any transaction with financial sources that Keith introduced to them, and that they agreed to compensate Keith if they utilized or entered into any transaction with those financial sources.

Defendants move to dismiss Keith's claim that the Byrider Entities breached the Oral Agreements on the following grounds: (1) the existence of the Oral Agreements is implausible; (2) Keith's allegations regarding the Oral Agreements fail to state the material terms of the agreements; (3) the Oral Agreements are unenforceable unreasonable restraints on trade; and (4) the alleged Oral Agreements violate the statute of frauds.

2

The court need only consider defendants' contention that the Oral Agreements constitute unenforceable unreasonable restraints on trade. Defendants rely on the court's

holding in *Keith I* that a prohibition against the Byrider Entities' contacting, dealing with, or otherwise being involved with any financial source disclosed by Keith is a restrictive covenant, and that a restrictive covenant is unreasonable unless it is limited appropriately as to time, territory, and type of activity.   Defendants maintain that, as alleged, the Oral Agreements contain prohibitions that are permanent, unlimited in scope, and thus constitute an unreasonable restraint of trade, and that the Oral Agreements are unenforceable under Texas law and cannot serve as the basis for Keith's breach of contract claim.

Keith responds that the fact that the parties did not expressly state the term of performance in an oral contract is not determinative, because it is well settled in Texas that where an oral contract omits such a term, a reasonable duration may properly be implied from extrinsic evidence; that he has never asserted that the parties expressly agreed to a proscriptive period of permanent or unlimited duration; and that because a reasonable duration for performance is to be implied, the Oral Agreements do not constitute unenforceable permanent restrictive covenants.   Keith also notes that Texas courts are empowered to reform overbroad restrictive covenants to the extent necessary to bring them into compliance with the reasonable restraint requirement.

At the outset, the court agrees with defendants that the prohibition in the Oral Agreements against the Byrider Entities' contacting or transacting with the financiers introduced to them by Keith constitutes a restrictive covenant.  In *Keith I* the court held that the Confidentiality/Non-Circumvention Clause in the Written Agreement constituted a restrictive covenant under Texas law because it "prohibit[ed] the Byrider Entities from

contacting, dealing with, or otherwise being involved with any financier disclosed by Keith."
*Keith I*, 2015 WL 5148124, at *5. The same reasoning applies to the Oral Agreements prohibiting the Byrider Entities from contacting or transacting with Keith's contacts. As the court noted in *Keith I*, "[u]nder Texas law, a restrictive covenant is an unenforceable restraint of trade . . . unless it meets three criteria," one of which is that "the restraint cannot be greater than necessary to protect the promisee's legitimate interest." *Id.* (citing *Desantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681-82 (Tex. 1990)). To meet this criterion, "the extent of the restraint must be limited appropriately as to time, territory, and type of activity." *Id.* (citing *Desantis*, 793 S.W.2d at 682). Accepting all well-pleaded facts as true, and viewing them in the light most favorable to Keith, as the court must, Keith has alleged that the Byrider Entities violated restrictive covenants that do not include any restraint on the temporal duration of the restrictive covenant, nor any restraint in terms of scope. Thus, as alleged, the restrictive covenants contained in the Oral Agreements are unenforceable restraints of trade.

Keith argues that the Oral Agreements are not unenforceable restraints of trade because the court can simply imply a reasonable temporal term for performance based on extrinsic evidence. In support of this argument, Keith cites two decisions of the Supreme Court of Texas, both of which discuss a court's power to imply an otherwise absent temporal limitation in an oral contract, specifically in the context of determining whether an oral contract falls within the statute of frauds. *See Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982) (per curiam); *Hall v. Hall*, 308 S.W.2d 12, 16 (Tex. 1957). Neither of these cases,

however, stands for the proposition that where a restrictive covenant fails to include a temporal limitation, the court can simply imply one from extrinsic evidence to save the contract from being deemed unenforceable.

Under certain circumstances, Texas law does permit, and in fact requires, a court to reform an otherwise unenforceable restrictive covenant. *See* Tex. Bus. & Com. Code Ann. § 15.51(c) (West 2011) ("If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable . . . the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant . . . to be reasonable[.]"). When a restrictive covenant lacks a reasonable limitation as to time or scope, but otherwise meets the requirements of an enforceable restrictive covenant, Texas law requires a court to reform the covenant to contain reasonable limitations on time and scope.  But under Texas law, although the court *can* reform an unenforceable covenant not to compete, "the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief."  *Id.*

Here, Keith is not suing for injunctive relief; he only seeks actual and compensatory damages allegedly resulting from the Byrider Entities' breach of the Oral Agreements. *See* 2d Am. Compl. 17-18.  Accordingly, even if the court were now to reform the Oral Agreements to contain the reasonable limitations as to time and scope necessary to make them enforceable, Keith would still be precluded under Texas law from recovering damages caused by the Byrider Entities' alleged breach of the Oral Agreements, which occurred

before the Oral Agreements were reformed.  And because Keith is only suing for relief that is unavailable under Texas law, he has failed to state a claim on which relief can be granted.

Accordingly, the court grants defendants' motion to dismiss Keith's claim that the Byrider Entities' breached the Oral Agreements.

IV

The court now considers defendants' motion to dismiss Keith's quantum meruit claim.

A

Quantum meruit is an equitable remedy that does not arise out of a contract, but is based on an equitable agreement to pay for benefits received.  *Keith I*, 2014 WL 5148124, at *6 (quoting *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 975 (5th Cir. 2014) (per curiam)).

> Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished.  This remedy "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted."  Recovery in quantum meruit will be had when non payment for the services rendered would "result in an unjust enrichment to the party benefited by the work."

*Id.* (quoting *MetroplexCore*, 743 F.3d at 975).  To state a claim for quantum meruit, Keith must establish that: "1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient."  *Id.* (quoting *MetroplexCore*, 743 F.3d at 975).

In *Keith I* the court held that Keith had failed to state a plausible claim for quantum

- 24 -

meruit against the Byrider Entities because he had not pleaded any factual content suggesting that Keith was a consultant for the Byrider Entities, and the agreement he relied on as the basis of his claim did not mention any compensation to Keith and thus did not provide a basis for the court to draw the reasonable inference that the Byrider Entities were on notice that Keith expected to paid for his disclosure of the financiers' identities.  The court also noted that the fact that Keith had alleged that he was entitled to $4.35 million, plus interest, in damages added to the implausibility of his claim that the Byrider Entities were on notice that he expected to be paid such a large sum for his efforts.  The court thus dismissed Keith's quantum meruit claim.

B

In his second amended complaint, Keith has repleaded his quantum meruit claim. Defendants again move to dismiss, arguing that the claim fails because it continues to suffer from the same defects noted in *Keith I*.  They maintain that Keith's allegations are self-serving, conclusory, and implausible, and that the second amended complaint lacks factual content supporting the premise that Keith actually brokered the Byrider Entities' transaction with RBS securities, or that the Byrider Entities were on notice that Keith expected to be paid for his efforts.

The court concludes that Keith's second amended complaint pleads a plausible quantum meruit claim.  Keith alleges that he provided valuable services and advice to the Byrider Entities in the form of financial transaction models, materials, and proposals that he had developed, including debt restructuring proposals, and other novel and unique asset-

backed security transactions that were not previously being utilized in the marketplace, as well as by introducing the Byrider Entities to his funding and equity sources. He alleges that he entered into the Written Agreement as well as the Oral Agreements with the Byrider Entities, wherein he agreed to provide materials and services and advice regarding possible variations on a private investment approach, follow-on business growth strategy, and a debt restructuring plan. He also asserts that the Byrider Entities agreed to compensate him if they ever utilized or entered into any transactions with the financial sources that Keith introduced to them, that the Byrider Entities were aware that Keith expected to be compensated for his services, and that they were aware of the standard minimum compensation for the types of transactions in which the Byrider Entities sought to engage. These allegations are at least sufficient to enable the court to draw the reasonable inference that the Byrider Entities accepted valuable services and/or materials from Keith in the form of financial information and planning and disclosure of the financiers' identities, and that they were on notice that Keith expected to paid for his disclosure of the financiers' identities.

Accordingly, the court denies defendants' Rule 12(b)(6) motion to dismiss Keith's quantum meruit claim.

V

Defendants move in the alternative that, if the court concludes that the second amended complaint states a claim for breach of contract and/or quantum meruit, Keith be required to replead to provide more details. They move under Rule 12(e) for a more definite statement.

To the extent defendants move for this relief concerning Keith's breach of contract claims, the court denies the motion as moot.  Insofar as defendants seek this relief regarding Keith's quantum meruit claim, the court denies the motion.

"A motion for a more definite statement under Rule 12(e) is available where the pleading 'is so vague or ambiguous that the party cannot reasonably prepare a response.'" *Conceal City, L.L.C. v. Looper Law Enforcement, LLC*, 917 F.Supp.2d 611, 621 (N.D. Tex. 2013) (Fitzwater, C.J.) (quoting Rule 12(e)).  "'Motions for a more definite statement are generally disfavored.'"  *Johnson v. BAE Sys. Land & Armaments, L.P.*, 2012 WL 5903780, at *4 (N.D. Tex. Nov. 26, 2012) (Fitzwater, C.J.) (quoting *Russell v. Grace Presbyterian Vill.*, 2005 WL 1489579, at *3 (N.D. Tex. June 22, 2005) (Solis, J.)).  "'When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede [its] ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted.'"  *Id.* (quoting *Brown v. Whitcraft*, 2008 WL 2066929, at *1 (N.D. Tex. May 15, 2008) (Fitzwater, C.J.)).

The court concludes that Keith's quantum meruit claim is not so vague or ambiguous that defendants cannot reasonably prepare a responsive pleading.  In fact, the court's conclusion that he has pleaded a plausible quantum meruit claim implicitly defeats the contention that the claim is so vague or ambiguous that defendants cannot reasonably prepare a responsive pleading.

\* \* \*

For the reasons explained, the court grants DeVoe's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction, and it dismisses Keith's action against DeVoe without prejudice by Rule 54(b) final judgment filed today.  The court grants in part and denies in part defendants' Rule 12(b)(6) motion to dismiss.  It grants defendants' motion to the extent of dismissing Keith's breach of contract claims, and it denies the motion as to Keith's quantum meruit claim.  The court denies in part as moot, and otherwise denies on the merits, defendants' alternative Rule 12(e) motion for more definite statement.

**SO ORDERED.**

June 5, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE