IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARVIN KEITH,                          §
                                       §
                    Plaintiff,         §
                                       §  Civil Action No. 3:14-CV-1317-D
VS.                                    §
                                       §
J.D. BYRIDER SYSTEMS, LLC F/K/A        §
J.D. BYRIDER SYSTEMS, INC., et al.,    §
                                       §
                    Defendants.        §

MEMORANDUM OPINION
AND ORDER

Defendants J.D. Byrider Systems, LLC f/k/a J.D. Byrider Systems, Inc. and Byrider

Sales of Indiana S, LLC f/k/a Byrider Sales of Indiana S, Inc. (collectively, the "Byrider

Entities") move for summary judgment on plaintiff Marvin Keith's ("Keith's") quantum

meruit claim.  For reasons that follow, the court denies the motion.

I

Because the background facts and procedural history are set out in the court's prior

memorandum opinions and orders, *Keith v. J.D. Byrider Systems, LLC*, 2014 WL 5148124,

at *1 (N.D. Tex. Oct.14, 2014) (Fitzwater, C.J.) ("*Keith I*" ), and 2015 WL 3539555, at *1

(N.D. Tex. June 5, 2015) (Fitzwater, J.) ("*Keith II*"), the court will focus on what is pertinent

in the present decision.

Keith is a consultant who advises businesses on financing strategies for acquisitions

and large-scale debt refinancing projects.[1]  In 2007 Keith began working with the Byrider Entities, nonparty Manchester, Inc. ("Manchester"), and James F. DeVoe, Jr. ("DeVoe"), who was then the Chief Executive Officer of the Byrider Entities, to negotiate Manchester's purchase of the Byrider Entities' existing components.

The Byrider Entities were concerned that Manchester would not be able to secure adequate financing for the acquisition, and DeVoe requested to meet with the financing sources whom Manchester intended to use.  Keith helped arrange a meeting between executives of the Byrider Entities, including DeVoe, and Keith's contacts at Greenwich Capital ("Greenwich"), which later became RBS Securities, Inc. ("RBS"), who were potential financiers for Manchester's acquisition.

During this time, Keith discussed with DeVoe the possibility that another entity might acquire the Byrider Entities if Manchester's attempt failed.  In connection with this contingency, Keith developed financing plans that involved entities other than Manchester. According to Keith's summary judgment evidence, he also explained to the Byrider Entities representatives features of asset-backed securitizations, and he explicitly discussed compensation that he expected in return for this information and for introducing his financing sources.

---

[1]In deciding the Byrider Entities' summary judgment motion, the court views the evidence in the light most favorable to Keith as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

- 2 -

In January 2008 Keith entered into a Non-Circumvention Agreement (the "Written Agreement") with the Byrider Entities. The Written Agreement's Confidentiality and Non-Circumvention Term ("Confidentiality/ Non-Circumvention Clause") provides:

> If Byrider does not consummate the Acquisition with Manchester or its assignee for a period of twenty four (24) months from the date of this agreement, Byrider and those of its affiliates to whom the Financiers are disclosed will not contact or deal with or otherwise be involved in any transaction with any Financier introduced to Byrider pursuant to the terms of this Agreement without the express written approval of Consultant, which approval may be withheld by Consultant in his sole and absolute discretion.

D. App. 155.

In 2011 nonparty Altamont Capital Partners acquired the components of the Byrider Entities then in existence. In April 2012 the Byrider Entities refinanced and restructured large amounts of debt using Keith's financing contacts and restructuring proposals, without Keith's involvement. The Byrider Entities restructured $145 million in receivables, made possible in part by financing from RBS.

Keith brought this lawsuit against the Byrider Entities and Devoe, asserting claims for breach of contract and quantum meruit. In *Keith II* the court dismissed all of Keith's claims against DeVoe for lack of *in personam* jurisdiction. *Keith II*, 2015 WL 3539555, at *1. The court dismissed Keith's breach of contract claims against the Byrider Entities, *id.* at *9, *11, and it declined to dismiss his quantum meruit claim, *id.* at *13. The Byrider Entities now move for summary judgment as to Keith's remaining quantum meruit claim, contending that Keith has not submitted sufficient evidence to prove any element of his quantum meruit

claim, and that his claim is barred by the statute of limitations.

## II

The Byrider Entities' summary judgment burden depends on whether they are moving for relief on a claim or defense for which they will have the burden of proof at trial. To be entitled to summary judgment on a matter for which they will have the burden of proof, they "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that they must demonstrate that there are no genuine and material fact disputes and that they are entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

When the summary judgment movant will not have the burden of proof at trial on a specific claim or defense, the party need only point the court to the absence of evidence of any essential element of the opposing party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a

- 4 -

verdict for the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial.  *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory where the nonmoving party fails to meet this burden.  *Little*, 37 F.3d at 1076.

### III

The court turns first to the Byrider Entities' contention that Keith has not submitted sufficient evidence to prove any element of his quantum meruit claim.

### A

Quantum meruit is an equitable remedy that does not arise out of a contract, but is based on an equitable agreement to pay for benefits received.  *Keith I*, 2014 WL 5148124, at *6 (quoting *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 975 (5th Cir. 2014) (per curiam)).

> Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished.  This remedy "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted."  Recovery in quantum meruit will be had when non payment for the services rendered would "result in an unjust enrichment to the party benefited by the work."

*Id.* (quoting *MetroplexCore*, 743 F.3d at 975).  To recover on his quantum meruit claim, Keith must prove that: "1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing,

- 5 -

expected to be paid by the recipient." *Id.* (quoting *MetroplexCore*, 743 F.3d at 975).

B

1

The Byrider Entities contend that Keith did not furnish valuable services to them. Keith maintains that he provided a valuable service by introducing the Byrider Entities to his financing contacts at Greenwich (which later became RBS). The Byrider Entities posit that this introduction was not actually their first contact with Greenwich, and thus not valuable to them; that the financing later received from RBS was not a novel arrangement, but a tested method in RBS's portfolio; and that Keith made the introduction, first, in his role as a consultant for Manchester, and then for himself as a potential purchaser, not as a service to the Byrider Entities. The Byrider Entities also maintain that this introduction was covered by the Confidentiality/Non-Circumvention Clause of the Written Agreement, so that any service Keith furnished was pursuant to that contract, not to an implied contract that can support a quantum meruit claim.

The second valuable service that Keith maintains he provided is information about securitized financing. The Byrider Entities maintain that Keith did not provide any formal planning materials and had no actual experience with asset-backed securitization. The Byrider Entities contend that, without these, the information that Keith provided to them could not have been a valuable service leading to the 2012 financing with RBS.

- 6 -

2

The court concludes that there is a genuine issue of material fact concerning whether Keith furnished a valuable service to the Byrider Entities.  For example,[2] Keith has introduced evidence that would enable a reasonable jury to find that he shared with representatives of the Byrider Entities financial strategies related to securitized transactions. He has also introduced proof that, at various times, he explained to executives of the Byrider Entities the potential of securitized financings in the Byrider Entities' circumstances.  A reasonable jury could find that Keith has met his burden on this element of his quantum meruit claim.

C

The Byrider Entities also move for summary judgment on the ground that they were not reasonably notified that Keith expected to be paid for any services rendered.  With regard to the introduction to Greenwich, the Byrider Entities maintain that this meeting was covered by the Confidentiality/Non-Circumvention Clause of the Written Agreement, and thus could not simultaneously be the subject of an agreement implied by quantum meruit.  The Byrider Entities also contend that, in the meetings with Greenwich, Keith acted as a consultant to Manchester or as an independent investor, not as a consultant to the Byrider Entities.

---

[2]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

The court concludes that there is a genuine issue of material fact concerning whether the Byrider Entities were reasonably notified that Keith expected to be paid for his services. For example,[3] Keith has introduced summary judgment evidence that some services were separate from the Greenwich meetings, which could fall outside the scope of the Confidentiality/Non-Circumvention Clause. Keith has also submitted evidence that he discussed his compensation with DeVoe on multiple occasions, including after Keith's involvement with Manchester concluded. A reasonable jury could find that Keith has met his burden on this element of his quantum meruit claim.

IV

The court now turns to the Byrider Entities' contention that Keith's claim is barred by the statute of limitations.

Under Texas law, the statute of limitations for quantum meruit is four years. *See Quigley v. Bennett*, 256 S.W.3d 356, 361 (Tex. App. 2008, no pet.). The Byrider Entities maintain that the limitations period commenced when Keith performed his services. *See NorthPark Partners, LP v. Macy's Retail Holdings, Inc.*, 2014 WL 462623, at *2 (N.D. Tex. Feb. 4, 2014) (Lynn, J). They posit that beginning the limitations period at any other time would apply a discovery rule that is not supported by these circumstances. *See Quigley*, 256 S.W.3d at 361-62. The Byrider Entities contend that, because this case was filed in 2014, no services performed by Keith before 2010 are compensable.

---

[3]*See supra* note 2.

Keith responds that the limitations period did not begin to run until a legal injury arose.  *See Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 226 (Tex. App. 2008, no pet.). He posits that, because a quantum meruit claim is based on unjust enrichment, he was not injured until the Byrider Entities benefited from the services he rendered.  *See Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 795-96 (Tex. App. 2007, no pet.). According to Keith, his legal injury did not occur until 2012, when the Byrider Entities completed a securitized financing transaction with RBS—a transaction that Keith contends was enabled by his services.

When payment is contingent on some future condition, the limitations period for quantum meruit begins to run at the time payment becomes due, not the times when services were rendered.  *See Lamajak*, 230 S.W.3d at 795-96 ("[The plaintiff] did not expect to be paid until he had worked the entirety of 1998 and [defendant's] profits for that year had been calculated.  [Plaintiff's] claim is based on [defendant's] failure to pay him after its profits for 1998 were determined. Thus, the earliest date his claim could have accrued is January 1, 1999.").  Because a reasonable jury could find that Keith did not expect to be paid unless a deal was consummated, it could also find that the limitations period did not accrue until the 2012 securitized financing transaction with RBS was completed, and that Keith's quantum meruit claim is not time-barred.  This result is not in conflict with *NorthPark Partners*, as the Byrider Entities suggest.  *See NorthPark Partners*, 2014 WL 462623, at *2 ("For completed jobs, a quantum meruit claim accrues when *a project* is completed." (emphasis added)).

*     *     *

Accordingly, the court concludes that a reasonable jury could find in favor of Keith

on his quantum meruit claim and could find that the claim is not barred by limitations.  The

court therefore denies the Byrider Entities' motion for summary judgment.

**SO ORDERED**.

October 20, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE